J. B. PRESTON COMPANY, INC., Respondent, *v.* RAYMOND J. FUNKHOUSER and Another, Doing Business under the Firm Name and Style of R. J. FUNKHOUSER & Co., Appellants.

First Department, April 22, 1932.

*George Link, Jr.*, of counsel [*Clark McKercher* with him on the brief; *McKercher & Link*, attorneys], for the appellants.

*Jeremiah A. O'Leary*, for the respondent.

MARTIN, J.  The plaintiff, a domestic corporation, has, since 1922, been engaged in the business of quarrying and selling red slate granules to the roofing industry.  The defendants are copartners conducting a similar business.  Under a contract covering the years 1923 to 1926, inclusive, the plaintiff agreed to sell to the defendants 15,000 tons of red slate granules in approximately equal monthly installments, the merchandise to conform to the standard specifications of the roofing industry.  The complaint alleges that because of the failure of the defendants to accept delivery the plaintiff was damaged in the sum of $75,874.32. The second cause of action was abandoned during the trial.

The defendants admitted the making of the contract and the failure to accept the total tonnage mentioned therein.  By way of affirmative defense they alleged that the plaintiff was unable to deliver the total quantity of slate granules conforming to the standard specifications of the roofing industry and that by reason thereof they were compelled to purchase this product in the open market, at an increased price of 25 cents per ton, and that as a result of plaintiff's inability to deliver, the defendants were damaged in the sum of $7,020.72.  At the trial the defendants waived their demand for an affirmative judgment against the plaintiff.  The defendants, by way of an affirmative defense and counterclaim, alleged that it was agreed between the plaintiff and the defendants that the plaintiff would not sell red slate granules conforming to the standard specifications of the roofing industry direct to the customers of the defendants at a price lower than $7.50 per ton, or at a price lower than that asked by the defendants of its customers, and that, in violation of this agreement, the plaintiff sold slate granules to the customers of the defendants at a price less than $7.50 per ton and that by reason thereof the defendants were damaged in the sum of $11,250.  The right to affirmative relief on this counterclaim was waived during the progress of the trial.

The defendants also alleged by way of an affirmative defense that during the years 1923–1925 the plaintiff waived all of the provisions of the contract of purchase requiring the defendants to purchase 15,000 tons of red slate granules.

The evidence produced upon the trial established that James B. Preston, who was plaintiff's principal witness and who controlled the interests of the plaintiff prior to 1923, had engaged with defend-

ants in other joint ventures relating to the manufacture and sale of green slate roofing granules, and that a controversy arose between Preston individually and the defendants, which was settled on January 23, 1923. The settlement agreement is shown as Exhibit " A." The parties to the agreement were James B. Preston, individually, and the defendants. The plaintiff herein was not a party to the settlement agreement, nor was it mentioned in that agreement, nor is there any evidence in the record that the settlement agreement was ever assigned to the plaintiff. This agreement provided for various substantial cash payments to J. B. Preston, individually, and also provided for the assumption by the defendants of various substantial obligations of J. B. Preston as an individual, and contained, among other things, the following provisions: " And in further consideration of these covenants, the parties of the second part agree to execute a contract with the party of the first part agreeing to purchase from said party of the first part, Fifteen thousand (15,000) tons of Red Slate Granules, in approximately equal monthly shipments, conforming to standard specifications of the roofing industry, during the year 1923, and a like quantity per year for a period of three (3) years thereafter at a price of Six Dollars and Fifty ($6.50) Cents per ton f. o. b. cars Granville, N. Y., terms net. * * *

"The parties of the second part agree to give their moral support to the party of the first part to the end that he retain his contract with the Philip Carey Company covering Red Slate."

The plaintiff concedes that all of the terms and conditions of the contract with J. B. Preston were fully complied with, including the execution of the contract of sale which is the basis for this action, and which was entered into on January 25, 1923, between the plaintiff corporation and the defendants. It makes no reference to the contract of January 23, 1923, between J. B. Preston, as an individual, and the defendants. The respondent contended, however, that the contracts, Exhibits " A " and " B," constituted a single continuous transaction in which the defendants obligated themselves to purchase 60,000 tons of red slate granules at the rate of 15,000 tons a year and that the profits plaintiff would have made in accordance with the terms of the contract are the damages plaintiff sustained.

The recovery by the plaintiff was based on a breach by the defendants in failing to take the amount of red slate granules contracted for by defendants.

There were several questions of fact, all of which the court resolved in favor of the plaintiff.

By a stipulation entered into between the parties at the beginning

of the trial, a jury was waived. It was agreed that the court should direct a verdict at the end of the case, and that the " verdict so entered in the minutes shall be deemed to have been rendered by a jury and have the same force and effect as though a jury was present."

The trial court, therefore, in conformity with the stipulation, passed upon all the questions of fact involved. An examination of the record convinces us that the direction of a verdict for plaintiff, with the exception of the interest item, was correct. To set forth in detail the evidence in support of the different items is unnecessary and would unduly prolong this opinion.

The conclusion reached by the trial court was supported by the evidence. It is clear that the defendants were unable to accept delivery in accordance with the contract and were liable for damages for failure to do so.

In their first point the appellants contend that the measure of damages is the difference between the contract price and the market value of red slate granules at the time of the breach. The contract price for the red slate granules during 1923–1926 was $6.50 per ton. The prevailing market price during these years was $7.50 per ton. The contract price during the year 1924 on the tonnage not taken was $6.11 per ton, the market price was $6.62 per ton. The defendants contend, therefore, that the plaintiff has not sustained any damage.

The rule of damages urged by the plaintiff was adopted by the court. We are of the opinion that the rule so adopted was correct and that the plaintiff was entitled to recover the difference between the cost of producing the granules and the price agreed upon in the contract.

There is another important question involved which requires our consideration. Interest was allowed on unliquidated damages. That this claim was clearly unliquidated appears to be beyond question. Prior to 1927 interest could not be recovered on such a claim. During the year 1927 section 480 of the Civil Practice Act was amended by chapter 623 of the Laws of 1927, allowing interest on all unliquidated claims. The question arises, however, whether interest may be allowed on such a claim which arose prior to the amendment.

This question has been the subject of an opinion in the Court of Appeals in so far as it applies to the State of New York (*Sweeney* v. *State of New York*, 251 N. Y. 417). In that case the court did not decide, however, whether such a statute could be enforced against a defendant other than the State of New York. When the matter was before the Appellate Division, Fourth Department (225 App. Div. 606) that court held that the portion of the statute

which made it compulsory to allow interest on unliquidated claims was not retroactive and did not apply to a claim such as is now before this court. In a *per curiam* opinion the court said: " The matter of interest allowed involved a substantial right and not merely a question of procedure. Statutes are presumptively applicable *in futuro* only. (*Jacobus* v. *Colgate,* 217 N. Y. 235; *Union Pacific R. R. Co.* v. *Laramie Stock Yards Co.,* 231 U. S. 190.) "

We are of the opinion that the court erroneously allowed interest on the unliquidated damages and that the judgment should be modified by striking out the allowance of interest, and as modified affirmed.

FINCH, P. J., McAVOY and O'MALLEY, JJ., concur.

Judgment modified by striking out the allowance of interest, and as so modified affirmed. Settle order on notice.